IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARJORIE SMITH, etc.,                    :

      Plaintiff,

    v.                                               :    Case No. 3:95cv445

UNITED STATES OF AMERICA,           :    JUDGE WALTER H. RICE

et al.,

      Defendants.                               :

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION TO
ALTER OR AMEND JUDGMENT OR, IN THE ALTERNATIVE, MOTION
FOR A NEW TRIAL (DOC. #263)

---

Pending before the Court is Plaintiff's Motion to Alter or Amend Judgment

or, in the Alternative, Motion for a New Trial, filed on May 24, 2012.  Doc. #263.

Defendant, the United States of America ("Defendant," "United States," or

"Government"), filed a Response in Opposition to Plaintiff's motion on June 18,

2012.  Doc. #265.  Plaintiff filed a Reply to Defendant's Response on July 9,

2012.  Doc. #266.  For the reasons set forth below, the Plaintiff's Motion is

OVERRULED.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is the surviving spouse of Donald Smith ("Smith") and the appointed

Executrix of his estate.  Doc. #260 at 3.  Smith was killed on November 24, 1993,

when the aircraft he was piloting crashed shortly after takeoff from the Portage

County Airport in Ravenna, Ohio. *Id.* at 3-7. Believing that the aircraft, a Piper

Arrow IV, PA 28 RT-201 ("Piper Arrow"), was negligently maintained by the

Government's employees, Plaintiff brought a wrongful death claim under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674,[1] with the Court's jurisdiction

provided by 28 U.S.C. § 1346(b)(1).[2] Because claims against the United States as

a defendant generally do not allow for a jury trial,[3] Plaintiff's claim was tried to the

Court. *See* 28 U.S.C. § 2402.

In accordance with the FTCA, Ohio law was applied to Plaintiff's negligence

claim against the Government. Doc. #260 at 99-100; *see* 28 U.S.C. § 2674.

Plaintiff had the burden of proving, by the preponderance of the evidence, that: 1)

the defendant owed the plaintiff a duty; 2) the defendant breached that duty; 3)

the defendant's breach of the duty proximately caused the plaintiff's injury. Doc.

#260 at 99-100 (citing *Chambers v. St. Mary's School*, 82 Ohio St. 3d 563, 697

---

[1] Plaintiff initially brought negligence claims against several other defendants, which were disposed of on summary judgment. Doc. #71 and Doc. #157. By the time of trial, the United States was the sole remaining defendant.

[2] Under 28 U.S.C. § 1346(b)(1), U.S. district courts "shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of any United States government employee acting within the scope of their employment.

[3] The exception is for claims alleging an illegal, excessive, or wrongful assessment or collection of taxes by the Internal Revenue Service, as described in 28 U.S.C. § 1346(a)(1). *See* 28 U.S.C. § 2402.

N.E.2d 198 (1998)). The parties agreed that Smith was owed a duty of reasonable care by Defendant. Doc. #260 at 102. Therefore, trial before the Court concerned the second and third elements of Smith's negligence claim: "whether the Plaintiff met her burden of proving, by the preponderance of the evidence, that the Defendant breached its duty of reasonable care and that said breach of duty was the proximate cause of Smith's death." *Id.*

Under the theory of the case that Plaintiff presented to the Court, the Government breached its duty of reasonable care by 1) negligently maintaining the aircraft, resulting in in the gouging of the right front cylinder of the Piper Arrow's engine in two places, and 2) failing to adequately inspect the aircraft and discover the exhaust leak caused by the gouges. *Id.* at 102-03. According to Plaintiff, carbon monoxide seeped into the cabin of the plane through the gouges that arose from the Government's breach, impairing Smith and causing the plane to crash. *Id.* at 102.

However, the Court found that Smith was not impaired by carbon monoxide and therefore, any negligence alleged by Plaintiff was not the proximate cause of the plane's crash or of Smith's death. *Id.* A number of facts supported the Court's conclusion that "carbon monoxide did not leak from the Piper Arrow and ... there was no pathway through which carbon monoxide could travel from the Piper Arrow's exhaust system to its cabin." Doc. #260 at 15. These facts included the following: although Plaintiff asserted that the carbon monoxide leaked through the gouges in the engine cylinder, specific characteristics of the cylinder material and

the gouges themselves were consistent with the gouges being caused by the crash itself; the crash materials lacked expected indications of a pre-crash carbon monoxide leak or melting associated with a leak; immediate post-crash inspections revealed no evidence of a carbon monoxide leak; no person flying in the Piper Arrow during the period before the crash, including Smith's co-pilot on the flight immediately preceding the crash, reported smelling exhaust fumes or suffering exposure to carbon monoxide; and exterior air flow would have dissipated any leaking carbon monoxide leaking before it could have entered the cabin. *Id.* at 12-15. Furthermore, the limited amount of carbon monoxide that was found in Smith's blood was not high enough to raise concerns that it contributed to the accident. Rather, the Court concluded that said limited amount resulted from his exposure to a space heater in the airport before the accident. *Id.* at 15-16.[4] There was also no evidence that the Government missed the presence of the gouges on inspection, that its maintenance of the aircraft caused the gouges, or that maintenance was performed in a way that breached any duty to Plaintiff. *Id.* at 107-09.

Based on the foregoing, the Court found that Plaintiff could not establish the second element of her negligence claim. Plaintiff's alleged evidence of breach, the

_____

[4] For the sake of brevity, only a summary of the Court's findings is presented here. An extensive analysis of these facts in light of Plaintiff's negligence claims may be found on pages 102-117 of the Court's Findings of Fact and Conclusions of Law. Doc. #260.

4

gouges through which carbon dioxide purportedly escaped, resulted from the crash. The gouges did not result from the maintenance and inspection of the aircraft, and there was therefore no breach of duty of reasonable care. *Id*. at 19, 118-19.

In addition, the Court found that Smith's disorientation, rather than carbon monoxide intake, was the cause of the Piper Arrow's crash. *Id*. at 19. The Court found that:

> The spatial disorientation was caused by unfavorable weather; the darkness at the time of the crash; switching from VFR to IFR, as he flew into the clouds; the movements of his head caused by sitting in the right front seat rather than the left front seat, where the instruments would have been in front of him; the distraction caused by the partially open, upper latch of the right cabin door; the noise of the wind and the aircraft's being buffeted by it; and his attempt to return to the Portage County Airport.[5]

*Id.* at 19-20.

Smith had failed to fasten the upper latch on the right cabin door before takeoff and was attempting to return to the Portage County Airport to land and fasten the latch. *Id*. at 6, 7.

On April 26, 2012, the Court entered judgment in favor of the United States. Doc. #261. The Court separately filed a Findings of Fact and Conclusions of Law, from which it the foregoing summary was derived. Doc. #260.

---

[5] VFR and IFR refer to two sets of flying rules, visual and instrument based. Under instrument flying rules, "a pilot uses instruments to navigate and orient the aircraft." Doc. #260 at 4 n.8.

Plaintiff filed her Motion to Alter or Amend Judgment, or, in the Alternative, Motion for a New Trial on May 24, 2012.  Doc. #263.  In her motion, supported by two affidavits and a number of exhibits, Plaintiff requested that the Court either enter judgment in her favor on the issue of liability, or conduct a new trial to determine whether Smith was "confronted with an open cabin door in flight," because of negligent maintenance and inspection by the Government.  *Id.* at 2.

The United States responded on June 18, 2012.  Doc. #265.  In its Memorandum in Opposition to Plaintiff's Motion, the Government argued that Plaintiff had failed to establish each element of her negligence claim at trial, and that ample evidence supported the Court's evidentiary and legal conclusions.

Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion was filed on July 9, 2012.  Doc. #266.  Therein, Plaintiff asserted that there was no evidentiary basis for the Court's finding of fact regarding the Piper Arrow's upper door latch, and that the evidence instead demonstrated the Government's negligence.

## II.    ANALYSIS

Plaintiff moves the Court under two subsections of Rule 59 of the Federal Rules of Civil Procedure.  Doc. #263.  First, she invokes Rule 59(e), requesting that the Court alter or amend the judgment entered in the Government's favor.  Alternately, she requests a new trial under Rule 59(a).  As a means of analysis, the

6

Court will first examine Plaintiff's arguments under Rule 59(e), and then turn to

Rule 59(a) as an alternative basis for her motion.

### A.    Plaintiff's Motion to Alter or Amend the Court's Judgment

Plaintiff contends that the Court had no basis for what she characterizes as

its "lynchpin finding" that Smith failed to secure the upper latch on the door of the

Piper Arrow prior to takeoff.  Doc. #263 at 4.  Because of this, Plaintiff believes

"the Court adopted an alternate theory of proximate cause of the crash to the

effect that Donald Smith lost control of the aircraft because Smith had failed to

latch the upper cabin door of the plane prior to takeoff." *Id.* at 2.  Plaintiff argues

that neither direct evidence nor the testimony of the Government's expert witness,

Mr. Bernard Coogan, support the Court's factual findings pertaining to the upper

latch on the cabin door. *Id.* at 3-8.  According to Plaintiff, the Government's

negligent maintenance, not any act or omission by Smith, was responsible for

failure of the latch to secure the cabin door. *Id.* at 8-12.  Plaintiff believes that the

condition of the door latch demonstrates the Government's negligent maintenance

of the aircraft and has attached affidavits from Kurt Yearout and Gregory Smith,

two FAA mechanics, to support her argument.  She specifically requests that the

Court alter or amend its judgment accordingly, with an award of damages in her

favor. *Id.* at 11.

Under Rule 59(e) of the Federal Rules of Civil Procedure, a party may move a

court to alter or amend a judgment within 28 days of the judgment's entry.  A Rule

7

59(e) motion applies to the "reconsideration of matters encompassed within the merits of the judgment" entered by the district court. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989). Relief under Rule 59(e) "is an extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *United States ex rel. Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1997) (citations omitted). A Rule 59(e) motion "is not an opportunity to re-argue a case" after a judgment adverse to the moving party. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). The rule may not "be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1). A court may alter or amend judgment only in the event of "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

Plaintiff's memorandum contains a lengthy critique of the testimony of Bernard Coogan and the bases for the Court's findings of fact pertaining to the upper door latch of the Piper Arrow's cabin door. However, it provides no basis for ruling in her favor under Civil Rule 59(e), because it points to no error of law,

newly discovered evidence, or change in controlling law that would show that she should have prevailed on the theory of negligence that she presented at trial. Plaintiff's negligence claim was predicated on Smith's exposure to carbon monoxide, which she argued was proximately caused by the Government's negligent maintenance and inspection of the Piper Arrow's engine. At trial, Plaintiff bore the burden of proving, by a preponderance of the evidence, that negligent maintenance by the Government's mechanics resulted in Smith's exposure to carbon monoxide, resulting in the plane's crash and Smith death. She could not do so. She fails to demonstrate or even suggest that her theory of negligence was correct and that the Court's conclusion to the contrary was in error. Neither does Plaintiff argue that the Court's finding that Smith's spatial disorientation (which arose from a multitude of factors) caused him to lose control of the aircraft and resulted in its crash was based on any error of law, or that newly discovered evidence challenges its premises, or any acceptable reason for challenging it under Rule 59. These are the issues that go to the merits of her claim, and because they are essentially unchallenged by her motion, it must be overruled for that reason alone.

Instead, Plaintiff has presented a new theory of negligence, arguing that the breach arose from the Government's negligent maintenance of the door latch in the aircraft. Plaintiff's post-trial attempt to relitigate her failed negligence claim under this alternate theory, with the benefit of hindsight, now aware of the factual findings the Court has made, is not an acceptable basis for a motion under Rule

9

59(e) to alter or amend the judgment entered against her.  Rule 59 exists so that a

court has the power "to rectify its own mistakes in the period immediately

following the entry of judgment."  *White v. New Hampshire Dept. of Emp't Sec.*,

455 U.S. 445, 450 (1982).  It would be both contrary to that "clear and narrow

aim" and an exploitation of the Rule's true purpose to permit its use for the

relitigation of unsuccessful claims, based upon a new theory of negligence and

upon affidavits and evidence not offered at trial.  *Id.*  As the Sixth Circuit noted,

when upholding the denial of a motion under Rule 59(e) that essentially sought to

present new claims:

> If a permissive amendment policy applied after adverse judgments,
> plaintiffs could use the court as a sounding board to discover holes in
> their arguments, then "reopen the case by amending their complaint
> to take account of the court's decision." *James v. Watt*, 716 F.2d 71,
> 78 (1st Cir.1983) (Breyer, J.).   That would sidestep the narrow
> grounds for obtaining post-judgment relief under Rules 59 and 60,
> make the finality of judgments an interim concept and risk turning
> Rules 59 and 60 into nullities. *See* 6 Charles Alan Wright, Arthur R.
> Miller & Mary Kay Kane, Federal Practice and Procedure § 1489 (3d
> ed.2010).

*Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F. 3d 612, 616

(6th Cir. 2010).

The Sixth Circuit's reasons are precisely why allowing Plaintiff to relitigate

her claim would unfairly prejudice the Government.  Plaintiff, with the benefit of

the Court's findings of facts now on the record, has jettisoned the "carbon

monoxide" negligence theory in favor of the "door latch maintenance" theory of

Defendant's negligence.  This substitution conveniently tailors her new theory with

10

the Court's factual findings, and she has located new experts to support her

theory, none of which were previously identified or disclosed to the Government

prior to trial.  It simply is not newly discovered evidence, within the meaning of

evidence that was "previously unavailable" and undiscoverable by the exercise of

due diligence, as required for the alteration or amendment of a judgment under

Rule 59(e).  *GenCorp, Inc. v. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.

1999); *see also HDC, L.L.C. v. City of Ann Arbor*, 675 F.3d 608, 614-15 (6th Cir.

2012) (upholding denial of Rule 59(e) motion by plaintiffs with access to "publicly

available" evidence over six months before judgment).

All of the evidence Plaintiff now presents was previously available to the

parties, and was subject to analysis and review by Plaintiff's expert witnesses

before trial.  For the foregoing reasons, the Court will not grant Plaintiff's request

to alter or amend its original judgment.

### B.     Plaintiff's Motion for a New Trial

As an alternative to alteration or amendment of the judgment, Plaintiff

moves the Court for a new trial under Federal Rule 59(a).  Doc. #263.  A court

may grant a new trial "after a nonjury trial, for any reason for which a rehearing

has heretofore been granted in a suit in equity in federal court."  Fed. R. Civ. P.

59(a)(1)(B).  Upon such a motion, a court may "open the judgment if one has been

entered, take additional testimony, amend findings of fact and conclusions of law

or make new ones, and direct the entry of a new judgment."  Fed. R. Civ. P.

11

59(a)(2).  The request for a new nonjury trial "must be based upon a manifest

misapprehension of the law or a mistake of fact."  *Solar Lab. v. Cincinnati Adver.*

*Prod. Co.*, 34 F. Supp. 783 (S.D. Ohio 1940).  An existing judgment "should not

be set aside except for substantial reasons."  *Hager v. Paul Revere Life Ins. Co.*,

489 F.Supp. 317, 321 (D.C. Tenn. 1977) (quoting 11 Wright & Miller, Federal

Practice and Procedure § 2804).

Plaintiff specifically moves the Court for a new trial under Federal Rule

59(a), "on the sole issue of whether [Smith] was confronted with an open cabin

door in flight because of the negligent maintenance of the subject aircraft" by

Defendants.  Doc. #263.  Again, Plaintiff presents an alternative theory of her

case, supported by the affidavits of new experts, as the basis for a new trial.[6]

This new theory was neither argued nor based upon the evidence at trial.

_____

[6] Plaintiff's theory relies upon her selective characterization of the Court's finding
that Smith failed to secure the aircraft cabin door as the "lynchpin finding" of
proximate cause  Doc. #263 at 12.  This can only result from a selective reading
of the Court's Findings of Fact and Conclusions of Law, wherein the Court
concluded that *multiple* factors contributed to Smith's spatial disorientation,
including:

> unfavorable weather; the darkness at the time of the crash; switching
> from VFR to IFR, as he flew into the clouds; the movements of his
> head caused by sitting in the right front seat rather than the left front
> seat, where the instruments would have been in front of him; the
> distraction caused by the partially open, upper latch of the right cabin
> door; the noise of the wind and the aircraft's being buffeted by it; and
> his attempt to return to the Portage County Airport.

Doc. #260 at 19.

12

Affidavits submitted with a Rule 59(a) motion will only support a new trial when, "if credited, would probably produce a different result." *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 180 (6th Cir. 1970). Conversely, affidavits that are "merely cumulative or impeaching" do not merit granting a new trial. *Id.* The Court has read and considered the affidavits submitted with Plaintiff's motion, and concludes that the testimony therein would not have produced a different result at trial. The newly submitted affidavits of Plaintiff's mechanics contend that the Piper Arrow's upper door latch was in such degraded condition that it "could not have been reliably secured shut," whether or not Smith attempted to shut the door. Doc. #263 at 11; Doc. #263-1 ¶ 25; Doc. #263-2 ¶ 26. However, testimony at trial by pilots who had recently flown in the aircraft made no mention of problems with the cabin door or its latch. Immediately before Smith's ill-fated flight, Edward Rugh had co-piloted the Piper Arrow with Smith on a flight from Columbus to Portage County. Doc. #191 at 81-82. Rugh testified that the top and bottom latching of the cabin door were "part of the pretakeoff checklist" performed immediately before the flight and overseen by Smith, and that Rugh had never known Smith "not to ensure that the cabin door latches were fixed" prior to takeoff. *Id.* at 20-21. Kevin Shope rented the Piper Arrow for five days the month before, during which time he flew the aircraft from Columbus, Ohio, to Lima, Ohio, then to Utica, Michigan and back two times before returning the aircraft. Doc. #203 at 5-9. During his four to five hours of flight time in the Piper Arrow, Shope had no mechanical or maintenance problems, and made no

13

mention of the cabin door latch. *Id.* The record itself, therefore, makes it impossible to credit the assertion by Plaintiff's mechanics that the door "could not have been reliably secured" by the existing latch. Doc. #263 at 11. Even if credited, they would not "produce a different result" and merit a new trial, because they do could not overcome the facts in the record. *Dunbar*, 426 F.2d at 180.

Plaintiff's novel interpretation of evidence long available to her cannot form the basis for granting a new trial, because "[i]t is well settled that a new trial will not be granted for newly discovered evidence, which, with reasonable diligence, might have been discovered and produced at trial." *Grant Cnty. Deposit Bank v. Greene*, 200 F. 2nd 835, (6th Cir. 1953); *see also United States v. Dailide*, 316 F.3d 611 (6th Cir. 2003) (upholding revocation of naturalization where newly submitted evidence did not show that petitioner was not a war criminal, and "existed in the public domain prior to the proceedings and could have been discovered earlier through due diligence"). In *Dunbar*, for example, the post-trial affidavit that "directly contradicted important findings of fact" made by the trial court was sworn to by a witness that the plaintiff could not locate before trial, even after retaining a detective agency to search for the witness. *Dunbar*, 426 F.2d at 180.

Here, in contrast, Plaintiff's experts had access to the Piper Arrow's wreckage prior to trial, and she had plenty of opportunity to develop a theory of negligence based on the condition of the door latch. Plaintiff lacked the necessary diligence to evaluate and present the evidence in a timely manner. The Court

considers the affidavits submitted by Plaintiff as an attempt to "merely impeach[]," *Dunbar*, 426 F.2d at180, as Plaintiff relies upon their assertions when characterizing the trial testimony of Bernard Coogan, a Government witness, as "sleight of hand or unwarranted puffery." Doc. #266 at 6. Plaintiff's counsel also had ample opportunity to cross-examine and impeach Mr. Coogan at trial, and she will not be presented with another opportunity where her first was unsuccessful. Based on the foregoing, the Court concludes that Plaintiff has not presented any substantial reason, "based upon a manifest misapprehension of the law or a mistake of fact," that would justify granting her request for a new trial under Rule 59(a). *Solar Lab.*, 34 F. Supp. 783.

## III.    CONCLUSION

In summary, Plaintiff fails to present newly discovered evidence as defined by the law, a change in the controlling law, or an error of law or fact that warrants the extraordinary remedies that she requests. Accordingly, the Court OVERRULES Plaintiff's Motion to Alter or Amend Judgment, or in the Alternative, for a New Trial (Doc. #263).

Date: March 8, 2013

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

15